IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 16-40-M-DWM |
| Plaintiff/Respondent, | |
| vs. | ORDER |
| ROAM SAVAGE CHANDLER, | |
| Defendant/Movant. | |

Roam Savage Chandler has moved to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. He is a federal prisoner proceeding pro se.

Due to some confusion regarding Chandler's intentions, an Order was filed on July 2, 2019, requiring him to "decide how he wishes to proceed by telling the Court which claims he wants it to address." Order (Doc. 59) at 4. Chandler responded, "I wish to continue my 2255 with all my same grounds and complaints as stated in my earlier appeal and letter to the Court." Resp. to Order (Doc. 60) at 1. Thus, despite his previous equivocation, Chandler wants to proceed on all the claims in his motion (Doc. 49).

In reviewing Chandler's motion, the Court has consulted the rough transcripts of the change of plea hearing, the *ex parte* hearing, and the sentencing hearing. Pursuant to 28 U.S.C. § 753(f), the United States will be required to order

the transcript for the Court's file and for Chandler.

## I. Preliminary Review

The first question is whether "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts. A petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court*, 98 F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolas*") (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases). But the Court should "eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." Advisory Committee Note (1976), Rule 4, Rules Governing § 2254 Cases, *cited in* Advisory Committee Note (1976), Rule 4, Rules Governing § 2255 Proceedings.

## II. Background

On October 5, 2016, a grand jury indicted Chandler on allegations arising from his activities with two women, A.B. and A.K. A.K. was under the age of 17. The indictment charged one count of prostituting A.K. by use of force, fraud, or coercion, a violation of 18 U.S.C. § 1591(a)(1), (b), and (c) (Count 1); two counts of using an interstate facility in aid of racketeering, violations of 18 U.S.C. §§ 1952(a)(3) and 2 (Counts 2 and 3); two counts of making false statements to FBI

agents, violations of 18 U.S.C. § 1001(a)(2) (Counts 4 and 5); and two counts of

distributing a controlled substance[1] to A.K., violations of 21 U.S.C. §§ 841(a) and

859 (Counts 6 and 7). Assistant Federal Defender Andrew J. Nelson was

appointed to represent Chandler. *See* Order (Doc. 12).

The evidence against Chandler likely would have included the testimony of

A.K. and A.B., corroborating motel records, ads posted on backpage.com, and text

messages, images, and videos found on Chandler's phone. One video captured

Chandler and A.K. discussing her prostitution as she cried and said she did not

want to do what he asked. *See* Offer of Proof (Doc. 16) at 3–4; Presentence Report

¶¶ 16, 30.

On January 18, 2017, the parties filed a fully executed plea agreement.

Chandler agreed to plead guilty to Counts 1 and 3. The elements of Count 1

excluded use of force, fraud, or coercion, *see* Plea Agreement (Doc. 17) at 3–4 ¶ 4

("Count 1"), reducing the mandatory minimum sentence from 15 to ten years. The

United States agreed to dismiss Counts 2, 4, 5, 6, and 7 and conditionally agreed to

recommend a three-level reduction in the offense level for acceptance of

responsibility. Each party agreed to waive the right to appeal any aspect of the

---

[1] It is not clear whether the United States' charge in Counts 6 and 7 was based on heroin, methamphetamine, or both. *See* Indictment (Doc. 1) at 2 (caption stating heroin), 5–6 (Counts 6 and 7 stating methamphetamine); *see also* U.S. Sentencing Mem. (Doc. 30) at 3, 5 (methamphetamine); *id.* at 6, 7 (heroin). Chandler did not plead guilty to either Count 6 or Count 7, and the discrepancy does not matter to any issue he has raised.

sentence if the prison term fell within the advisory guideline range or outside the range to the party's advantage. *See id.* at 2 ¶ 2, 7 ¶ 6, 8 ¶ 8. Chandler pled guilty in open court on January 24, 2017. *See* Minutes (Doc. 19).

On April 17, 2017, counsel requested an *ex parte* hearing because Chandler had "suggested that he received ineffective assistance of counsel and indicated that he desires new counsel." *Ex Parte* Mot. (Doc. 25) at 1. On April 18, a hearing was set for April 20, 2018. Order (Doc. 26). At the hearing, Chandler explained that he had written a detailed account of his reasons for wanting new counsel but did not bring it with him because he was not informed of the purpose of the hearing. Nonetheless, he articulated some concerns. His concerns did not demonstrate either an irreconcilable conflict or a breakdown in communications with counsel. Nor did he suggest a sound reason to doubt the quality of his representation. Appointment of new counsel was not warranted. *See* Minutes (Doc. 27).

At sentencing, the base offense level was 30. Chandler received a two-level upward adjustment for unduly influencing a minor's participation in prohibited sexual conduct and a second two-level upward adjustment for commission of a sexual act. The adjusted offense level was 34. With a three-level reduction for acceptance of responsibility, the total offense level was 31. *See* Presentence Report ¶¶ 29–39. Chandler's criminal history category was V. The advisory

guideline range was 168 to 210 months. *See id.* ¶¶ 53, 107; *see also* Statement of Reasons (Doc. 46) at 1 § III.

Following a downward variance, Chandler was sentenced to serve 120 months on Count 1 and 35 months on Count 3, concurrent to each other and consecutive to a Gallatin County sentence for criminal possession of dangerous drugs. He must also serve a total of ten years on supervised release. *See* Judgment (Doc. 45) at 2–3; Statement of Reasons at 3–4.

Chandler did not appeal. His conviction became final on May 29, 2017. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). He timely filed his § 2255 motion on May 14, 2018. *See* 28 U.S.C. § 2255(f)(1).

### III. Claims and Analysis

Chandler claims that counsel was ineffective in various respects. These claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). At this stage of the proceedings, Chandler must allege facts sufficient to support an inference (1) that counsel's performance fell outside the wide range of reasonable professional assistance, *id.* at 687-88, and (2) that there is a reasonable probability that, but for counsel's unprofessional performance, the result of the proceeding would have been different, *id.* at 694.

Chandler's claims are reorganized here, but all are addressed.

5

## A. Force, Fraud, or Coercion

In several claims, Chandler states that he does not believe he was guilty of using force, fraud, or coercion. In fact, he was not convicted or sentenced for such conduct.

Chandler's guilty plea did not require him to admit using force, fraud, or coercion. The minimum sentence of 120 months, triggered by conviction on Count 1, applies to any defendant who "recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means" a person under the age of 18 to engage in a commercial sex act, provided the defendant knew the person's age, or had a reasonable opportunity to observe the person, and knew the person would engage in a commercial sex act. *See* 18 U.S.C. § 1591(a) & (1), (b)(2), (c). A higher minimum sentence of 15 years would have applied if Chandler had pled guilty to using force, fraud, or coercion. *See id.* § 1591(b)(1). He did not, and he was not subject to a 15-year mandatory minimum sentence. *See* Plea Agreement (Doc. 17) at 2 ¶ 2 & n.1, 3–4 ¶ 4; Presentence Report ¶ 106.

There was some evidence a reasonable juror might have construed as a threat of serious psychological harm, *see* Presentence Report ¶ 16, and the definition of "coercion" includes that harm, *see* 18 U.S.C. § 1591(e)(2)(A)–(B), (5). But Chandler was neither convicted of nor sentenced for using force, or fraud, or coercion. This claim is denied.

## B. Conflict of Interest

Chandler asserts that counsel had two conflicts of interest and that the *ex parte* hearing on the issue did not give him a fair opportunity to present his claims.

### 1. Strait

Chandler asserts counsel had a conflict of interest because he previously represented Ian Strait, who was potentially a witness against Chandler. *See* Mot. § 2255 (Doc. 49) at 7–8.

Counsel's prior representation of Strait was discussed at the *ex parte* hearing on April 20, 2017. Counsel explained, and the Court's records confirm, that he appeared with Strait in two Rule 5 transfer proceedings, one prior to a trial in the District of Idaho and the other prior to a revocation proceeding there. *See* Order (Docs. 7, 19), *United States v. Strait*, No. MCR 06-58-M-JCL (D. Mont. Apr. 26, 2007, and Jan. 18, 2012); Fed. R. Crim. P. 5. The transcript of the April 20 hearing reflects that counsel told Chandler about this representation, and the prosecution assured counsel that Strait would not be called as a witness if Chandler decided to go to trial.

This is not adequate raw material for a claim that counsel's representation of one client was adversely affected by his loyalty to another. There was and is no evident conflict between Strait's interests in the Idaho case and Chandler's in this case. *See, e.g., Mickens v. Taylor*, 535 U.S. 162, 167–70 (2002).

## 2. A.B. and Notice of the Hearing

Chandler asserts he did not have sufficient advance notice of the *ex parte* hearing and, as a result, he was not able to prepare or present his issues adequately. As a result, he avers, he did not direct the Court's attention to the fact that Strait had an intimate relationship with A.B., the second victim in Chandler's case. *See* Mot. § 2255 (Doc. 49) at 7–8, 11. At the hearing, Chandler only briefly mentioned that another client of counsel was the boyfriend of one of the victims.

Chandler now explains that he believes "my counsel would have felt some ill-will toward how I treated his past client's significant other." He also asserts that "loved ones of incarcerated inmates have contact with the inmate's coun[sel]," suggesting that his counsel must have met A.B. *See* Mot. § 2255 (Doc. 49) at 8.

First, counsel's loyalty to a client is not personal but professional. It is not reasonable to assume ill-will as Chandler does.

Second, even assuming counsel met A.B. through Strait—which is merely speculative—there is no reason to infer that meeting A.B. both undermined counsel's ability to advocate for Chandler's interests and also made him incapable of realizing he should not represent Chandler. In *Mickens*, a capital case, the defendant alleged his trial counsel had a conflict of interest because he previously represented the juvenile male the defendant was accused of raping and murdering. *See id.* at 164–65. These circumstances did not support vacation of the defendant's

conviction. The Supreme Court affirmed the appellate court's finding that the defendant failed to "establish that the conflict adversely affected his counsel's performance." *Id.* at 173–74.

Chandler's case is unlike *Mickens* because Chandler's counsel did not represent A.B. But, like the defendant in *Mickens*, Chandler fails to identify any decision counsel made or omitted under the influence of his assumed acquaintance with A.B. The record does not disclose or suggest any such decision.

### 3. Conclusion

Chandler's allegations do not support either an inference that a conflict of interest existed or, even assuming it did, that it affected counsel's performance. This claim is denied.

### C. Voluntariness of Guilty Plea

Chandler asserts that he was "pressured into an untimely and unknowing plea." He explains that counsel told him filing a motion to suppress would mean no plea agreement would be offered, that an order granting additional time to investigate was "most unlikely," and that he did not "have a shot . . . at trial." *See* Mot. § 2255 (Doc. 49) at 8. Chandler describes these statements as "misinformation." He was given an opportunity to explain why he believes counsel was wrong. *See* Order (Doc. 54) at 1.

### 1. Suppression

Chandler asserts that counsel should have moved to suppress A.K.'s statement on the grounds that she was a juvenile and her statement was coerced. *See* Resp. to Order (Doc. 58) at 1–2.

"[I]llegally obtained confessions may be less reliable than voluntary ones, and thus using a coerced confession at another's trial can violate due process." *Douglas v. Woodford*, 316 F.3d 1079, 1092 (9th Cir. 2003) (citing *Clanton v. Cooper*, 129 F.3d 1147, 1157–58 (10th Cir. 1997)). To show that A.K.'s statement was coerced, Chandler says:

> [I]n my discovery it states that "AK" had asked to not continue with the line of questioning and persistently disagreed that I forced or enticed her into the line of work stated in my case. They continued to question her on these issues after asking not to continue with questioning. . . . [S]he was a suspect in a crime and should have been granted the same laws a suspect is granted . . . . "AK" was not read her *Miranda* rights, d[ue] to this fact she didn't know she could ask for a lawyer and her 5th am[]endment rights. In my discovery it states that "AK finally 'agreed' that her boyfriend Chandler put her up to it." "[F]inally agreed" shows that authorities clearly lead or steered AK into that answer. Showing coercion and that she readily denied allegations against me.

Resp. to Order (Doc. 52) at 1–2.

The question here, however, is whether it was reasonable for counsel to *forego* filing a motion to suppress, not whether counsel could have filed a motion to suppress. Under the right circumstances, A.K.'s statement may have been useful evidence against Chandler. But even if counsel succeeded in suppressing

A.K.'s pretrial statement, the United States still could have called her to testify before a jury at trial. The seizure of Chandler's phone and discovery of the video showing him and A.K. discussing her prostitution was "live" evidence and arguably more compelling, and more problematic for Chandler, than her pretrial statement to law enforcement authorities. *See* Presentence Report ¶ 16. Chandler points to no basis to suppress the video. And it is not unusual for the prosecution to lose interest in a plea bargain, or alter its terms, when it must respond to a motion to suppress.

Chandler's allegations, in light of the record of the case, show that any reasonable defense lawyer could have believed a suppression motion, even if successful, was not likely to benefit Chandler more than the favorable plea agreement he accepted. Counsel's failure to file a motion to suppress did not make Chandler's guilty plea involuntary or unintelligent.

## 2. Time to Investigate and Chance of Acquittal at Trial

Chandler says counsel should have sought additional time to investigate and, had he done so, could have shown that advertisements were posted on backpage.com while Chandler was at work and was not allowed to use a cell phone.

The Court will assume that Chandler could have shown he was in fact at work when every ad involving A.B. was posted and that he did not have access to a

cell phone or other internet-enabled device or was constantly under observation by someone who would enforce a policy prohibiting use of a device.

A.B.'s (and A.K.'s) backpage photos were found on Chandler's phone. Count 3 included an aiding and abetting theory, *see* Indictment (Doc. 1) at 4 (citing 18 U.S.C. § 2), so the United States could have convicted him without proving he personally posted A.B.'s advertisements. Had the case gone to trial, Chandler could have been convicted on Count 3 if the jury believed A.B.'s testimony that he suggested she engage in prostitution and helped her to prepare an advertisement to post on backpage.com with the intent of facilitating A.B.'s prostitution. *See, e.g.,* Offer of Proof (Doc. 16) at 4; Presentence Report ¶¶ 18–21, 23.

In addition, the question is not whether Chandler really was guilty of Count 3 beyond reasonable doubt but whether it was so unreasonable for counsel to advise him to plead guilty to Counts 1 and 3 that his plea was involuntary. Assuming the truth of all of Chandler's allegations, he has not shown he had a reasonable chance of acquittal at trial. The plea agreement was favorable to him. Count 3 carried a five-year maximum penalty, whereas Counts 4 and 5 carried eight-year maximum penalties, and Counts 6 and 7 carried 40-year maximum penalties. Further, if he had gone to trial, the jury might have found beyond reasonable doubt that he used coercion in trafficking A.K., resulting in a 15-year mandatory minimum sentence rather than ten.

Chandler's allegations do not support an inference that his guilty plea to Count 3 was involuntary.

### 3. Supervised Release

Chandler contends that counsel did not realize before the change of plea hearing that supervised release on Count 3 could be up to five years, not merely up to three years. *See* Mot. § 2255 (Doc. 49) at 9. This error was addressed at the change of plea hearing. Chandler decided to proceed. His decision was sensible. The potential life term of supervised release on Count 1 made the difference between three and five years' supervised release on Count 3 virtually irrelevant to his choice between pleading guilty and going to trial. *See, e.g.*, *Hill v. Lockhart*, 474 U.S. 52, 59–60 (1985).

Chandler also claims counsel failed to explain that his conditions of supervised release could include restrictions on internet use and on his ability to be with his nieces and nephews. *See* Mot. § 2255 at 9. But, as noted above, Chandler has not pointed to a reasonable chance of acquittal at trial. Further, these conditions of release could have been imposed regardless of whether Chandler was convicted at trial or on a guilty plea. There is no reason to suppose they affected his choice between pleading guilty or going to trial.

### 4. Conclusion

None of Chandler's allegations supports a reasonable inference that

counsel's advice was wrong, much less "so incorrect and so insufficient that it undermined his ability to make an intelligent decision" to waive his right to trial and plead guilty. *Lafler v. Cooper*, 566 U.S. 156, 160 (2012); *Hill v. Lockhart*, 474 U.S. 52, 59–60 (1985); *Turner v. Calderon*, 281 F.3d 851, 880 (9th Cir. 2002) (quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992)). This claim is denied.

### D. Brain Development

Chandler contends that counsel should have presented evidence that his early use of drugs inhibited his brain development and so mitigated or negated his liability for the offenses charged against him. *See* Mot. § 2255 (Doc. 49) at 7.

A person is not liable for a criminal offense if, "as a result of a severe mental disease or defect," he was "unable to appreciate the nature and quality or the wrongfulness of [her] acts." 18 U.S.C. § 17(a); *Clark v. Arizona*, 548 U.S. 735, 750 & n.12 (2006); 9th Cir. Model Crim. Jury Instr. 6.4 (2010, as amended June 2015). The defendant must prove his insanity by clear and convincing evidence. *See* 18 U.S.C. § 17(b). The record provides no support for an inference that counsel should have realized Chandler might meet that high and narrow standard, *see, e.g.*, Presentence Report ¶¶ 69–70, 75–83, and his current allegations do not add new support.

A person may also pursue a defense of diminished capacity by introducing

14

evidence he did not "possess[] the ability to attain the culpable state of mind which defines the crime." *United States v. Twine*, 853 F.2d 676, 678 (9th Cir. 1988); 9th Cir. Model Crim. Jury Instr. 6.9 (2010). The defense is relevant to specific intent crimes. *See Twine*, 853 F.2d at 679. Count 3 was a specific intent crime, because the United States had to prove Chandler used "a facility of interstate commerce *with the intent to* promote . . . or carry on, or facilitate the promotion . . . or carrying on of . . . prostitution." But the count that carried a ten-year mandatory minimum, Count 1, required only knowing conduct, not a specific intent. *See* Plea Agreement (Doc. 17) at 3–4. Had Chandler gone to trial, the United States would have had an opportunity to persuade the jury beyond reasonable doubt that Chandler used force, fraud, or coercion, and Chandler would have been subject to a 15-year mandatory minimum sentence if a jury had found those elements. Further, it was reasonable for counsel to find the victims' statements strongly indicated Chandler formed the required intent on Count 3. *See, e.g.*, Presentence Report ¶¶ 14, 16, 20.

As Chandler acknowledges, at sentencing, counsel presented evidence of the effects of Chandler's early drug use. *See* Sentencing Mem. (Doc. 33) at 11–13. That was the appropriate time for it. U.S.S.G. § 5K2.13 authorizes a downward departure if the defendant shows he "committed the offense while suffering from a significantly reduced mental capacity" and that his reduced capacity "contributed

substantially to the commission of the offense." U.S.S.G. § 5K2.13 para. 1. But Chandler's evidence did not meet even this lower standard.

In sum, Chandler's allegations do not support an inference that he was insane or unable to form the intent to promote prostitution. Counsel presented evidence of his diminished capacity at sentencing, and there is no reason to believe it was counsel's fault the evidence was unpersuasive. This claim is denied.

### E. Failure to Appeal

Chandler alleges he instructed counsel to file a notice of appeal verbally after sentencing and also wrote a letter to him and sent a handwritten verbatim copy of the letter to his sister. *See* Resp. to Order (Doc. 57). He also alleges he "had family contact [counsel's] office . . . seeking counsel on appeal and other issues." *See* Mot. § 2255 (Doc. 49) at 4.

Chandler waived appeal in the plea agreement. *See* Plea Agreement (Doc. 17) at 8 ¶ 8. Nonetheless, he is entitled to an opportunity to prove this allegation. *See Garza v. Idaho*, __ U.S. __, 139 S. Ct. 738, 749–50 (2019); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000).

The United States must respond to this claim. It may either choose not to oppose the claim, as suggested in *United States v. Sandoval-Lopez*, 409 F.3d 1193, 1198–99 (9th Cir. 2005), or it may state that it intends to contest the matter. It must not discuss the matter with Chandler's counsel at this time.

Accordingly, IT IS ORDERED:

1. Pursuant to 28 U.S.C. § 753(f), the Court CERTIFIES that the following transcripts are required to decide the issues presented by Chandler:

(a)    the change of plea hearing, held January 24, 2017;

(b)    the hearing on Chandler's motion for new counsel, held on April 20, 2017; and

(c)    the sentencing hearing, held May 15, 2017.

2. The United States shall immediately order the transcripts of those hearings for the Court's file, with copies to be delivered to Roam Savage Chandler, BOP # 16569-046, FCI Edgefield, Federal Correctional Institution, P.O. Box 725, Edgefield, SC 29824.

3. With the exception of Chandler's claim that he instructed counsel to appeal, all other claims in his motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 are DENIED.

4. On or before **November 15, 2019,** the United States must respond to Chandler's claim regarding counsel's failure to file a notice of appeal.

DATED this 14 day of October, 2019.

Donald W. Molloy
United States District Court